## AMERICAN NAT. INS. CO. v. HUEY.

### No. 1743—6191.

Commission of Appeals of Texas, Section A.

Dec. 30, 1933.

Tyler, Hubbard, Countess & White, of Belton, for plaintiff in error.

E. C. Zellner, of Belton, for defendant in error.

CRITZ, Judge.

We adopt the following statement of the nature and result of the suit contained in the opinion of the Court of Civil Appeals:

"Appellant sued appellee for damages alleging fraud of its agent in procuring his application for and delivery to him of a life insurance policy providing double indemnity for accidental death, when he had applied for, and the agent had represented to appellant that he was delivering to him, a life, health, and accident policy, providing monthly compensation of $86.10 for total disability from accident. The policy was delivered to appellant on March 12, 1929, and on April 12, 1929, he was totally disabled by accident. He alleged that he did not know that such misrepresentations were untrue until after his injury; that he relied upon the representations of said agent and was misled thereby. He asked for damages for such fraud, and in the alternative that the policy delivered to him be reformed so as to speak the true agreement, and that it be enforced accordingly. The case was tried to a jury upon special issues, and upon their findings judgment rendered that appellant take nothing; hence this appeal.

"The jury found in response to the issues submitted: (1) That the agent of appellee represented to Huey that for a monthly premium of $4.46 said insurance company would deliver to him a policy providing $86.10 per month in case of total disability; (2) that such representations were made as a material inducement to Huey to apply for such insurance and to pay his monthly premiums; (3) that but for such representations Huey would not have applied to appellee company for insurance, and would not have paid such premiums; (4) that Huey did not know when he signed the application what kind of insurance policy it called for; (5) that he was guilty of negligence in not ascertaining the recitals contained in said application; (6) that when the policy was delivered to him he put it away for safe-keeping, and paid the premiums without knowledge of the kind of policy it was; (7) that in so doing he was guilty of negligence; (8) that he represented in his application that he had not consulted with, nor been treated by, a physician within seven years prior thereto; (9) that such representation was untrue; (10) that this representation was not a material inducement to the insurance company to issue said policy; (11) that the insurance company would not have issued said policy if said representation had not been made.

"The insurance company, in addition to denying liability, asked for a cancellation of the policy issued by it, on the ground of said false representations of the applicant, and on the ground that he had failed to pay his premiums subsequent to July, 1930. The judgment denied appellant recovery, and canceled the policy."

The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. In its opinion,

that court in effect held that Huey's pleadings and the evidence justified a judgment in his favor for a money recovery. The Court of Civil Appeals further held that the evidence did not justify a judgment canceling the policy as sought by the insurance company. 45 S.W.(2d) 340. The insurance company brings error.

It appears from the record and findings of the jury that on March 6, 1929, Huey made an application for insurance to the insurance company. As actually written and signed, this application called for the issuance of a life insurance policy for $2,000, providing for double indemnity in case of accidental death, and waiver of premiums in case of total disability. On March 12, 1929, a policy of insurance issued by such company. was delivered to Huey in all things conforming to the application as written.

It further appears that, at the time the above application was made, the soliciting agent who secured the same represented to Huey that he was signing an application for a life, health, and accident policy, which would provide for a monthly compensation of $86.10 in case of total disability from an accident. Huey believed and relied on such representation at the time.

It further appears that, when the policy was delivered to Huey on March 12, 1929, he accepted the same without reading it, still relying on the statement of the soliciting agent as to its contents, and took same home and placed it in his trunk for safe-keeping. He never at any time prior to his disability made any effort to examine such policy. Huey was totally disabled on April 12, 1929.

In accepting the policy, Huey relied on the representations made to him at the time he signed the application. The policy, as usual, is rather lengthy, but we think that any ordinary person reading it would have known that it was not the character of policy Huey understood he was buying, or that the agent represented to him he was buying.

The policy itself contains the following stipulation:

"Power to Modify. No agent can make, alter or discharge this contract or extend the time for payment of premiums, nor can this contract be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the Company, in compliance with the law of the state in which the contract is issued, signed by the President, or one of the Vice Presidents or Secretaries, whose authority will not be delegated."

If we understand the record, the soliciting agent did nothing to prevent Huey from reading the policy, and no excuse is offered by him for not doing so, except that he relied on the statements by the soliciting agent at the time he executed the application, and perhaps the further excuse that he would not

have understood it if he had read it. In regard to this last matter, as already stated, we think any ordinary person would have discovered that the policy was not the kind that Huey says he thought he was buying by a very casual reading thereof.

There is no evidence in the record showing, or tending to show, that the insurance company intended to issue any policy except the one actually issued. Also, if we understand this record, the agent who took the application was not a general agent of the company, but merely a limited agent, with authority only to take the application and transmit it to the company.

■ Under the above record, we are here confronted with this simple question:

Can an applicant, who, without reading it, signs an application for life insurance of a certain kind, and delivers same to a mere soliciting agent of an insurance company for transmission to such company, and who later accepts the policy issued thereon, and in full conformity therewith, also without reading it, recover as on a different contract containing further provisions from the one called for by the application, and represented by the policy issued, simply because the soliciting agent, with no authority to bind the company, further than to solicit the application and transmit it to the company, either innocently or intentionally represents to the applicant that the application calls for such different contract containing such further provisions?

■ We think but to merely state the question is to answer it in the negative. Ribble v. Roberts (Tex. Civ. App.) 180 S. W. 620, 621; 1 Joyce on Insurance, par. 58. In this connection we think the rule as stated in Joyce on Insurance, supra, disposes of Huey's instant action. The rule was quoted by Judge Rice in the Ribble Case, supra. We again quote it here. It is as follows: "If the application for insurance does not set forth all the provisions which the policy is to contain, and the agent represents that the policy will contain certain lawful stipulations, the policy must contain them, or the insured will not be bound to accept it. In such case, however, it is incumbent upon the applicant immediately on receipt of the policy to notify the company of his refusal to accept the policy."

■ It is the settled law of this state that ordinarily the provisions of an insurance contract are binding on the insured whether he has read the policy or not. 24 Tex. Jur. p. 689, No. 20, and authorities there cited. Of course, this rule is subject to the further rule that, where a mere soliciting agent fraudulently represents to an applicant for insurance that the application calls for a different policy than it actually does call for, the applicant may rescind the contract. Mutual Life Ins. Co. v. Hargus (Tex. Civ.

App.) 99 S. W. 580. On the other hand, if there is any authority holding that an action can be maintained against an insurance company, either to reform a policy or for damages according to the measure here sought to be applied, on account of misrepresentations made by a mere soliciting agent, such authority has not been pointed out to us, and we have found none after diligent search. On the other hand, it is the settled law that: "An agent whose powers are limited to receiving and forwarding applications for insurance cannot make a contract binding on the company." Bankers Lloyds v. Montgomery (Tex. Com. App.) 60 S.W.(2d) 201, 202. To say that this rule can be avoided by the expedient of a damage suit of the character here involved, for all practical purposes, would destroy it.

As shown by the above statement copied from the opinion of the Court of Civil Appeals, the insurance company sought by way of cross-action the cancellation of this policy. We think the Court of Civil Appeals has correctly disposed of that issue.

We recommend that the judgment of the Court of Civil Appeals and district court be both reversed and judgment here rendered as follows:

(1) That Huey take nothing on his action against the insurance company for a money judgment.

(2) That the insurance company be denied a cancellation of the policy actually issued.

(3) That Huey and the insurance company each pay one-half the costs in the district court, that the insurance company pay the costs in the Court of Civil Appeals, and that Huey pay the costs in the Supreme Court.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered as recommended by the Commission of Appeals.