## FRANKLIN FIRE INS. CO. v. CLARK.

### No. 5018.

Court of Civil Appeals of Texas. Texarkana.

Dec. 23, 1936.

Rehearing Denied Jan. 14, 1937.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

McKinney & Berry, of Cooper, for appellee.

SELLERS, Justice.

H. D. Clark ·brought this suit in the county court of Delta county against the Franklin Fire Insurance Company, to recover, upon a policy of insurance, damages in the sum of $607.81. The policy covers loss by tornado, and upon a verdict the damages were assessed at $607.81. From this judgment defendant has appealed to this court.

The policy sued upon was issued May 10, 1933, and covered a period of five years from the date thereof. The premium provided for in the policy was $64, payable $12.80 cash, and a note for the remainder was executed by appellee and was payable in installments of $12.80 on May 1, 1934, and a like amount on the 1st of May of each succeeding years of 1935, 1936, and 1937. The policy provided:

"It is specifically agreed that this Company shall not be liable for any loss or damage that may occur to property herein described while any promissory note or obligation or any part thereof given for premiums past due and unpaid. Payments on notes or other promissory obligations must be made to the Company, in care of the Manager or Assistant Manager of the Farm Department at Chicago, Illinois. The Company may collect by suit or otherwise such premium notes or other policy obligations; and the payment of such premium notes or other obligations or installments thereof must be received by the said office of the Company before there can be any revival of the policy, which shall in no event carry the insurance beyond the original term. * * *

"If any part of the premium of this policy, for which notes or other promissory obligations have been given, be not paid when due, the whole premium shall be immediately due and payable. No act or word, written or spoken, of any agent or solicitor, shall extend the time for payment or waive any forfeiture or suspension of the policy for nonpayment."

The note provided: "This note being given in payment of the above policy of insurance, it is hereby agreed that if this note be not paid at maturity, said policy shall be suspended, inoperative, and of no .

force and effect, so long as this note or any part thereof remains due and unpaid."

The tornado which destroyed appellee's property occurred on June 12, 1934. At that time the May 1, 1934, installment on the note had not been paid. The premium was mailed to appellant at its home office on the next day after the damage by appellee sending his check for the amount of the installment. A few days later the company received notice of the loss and immediately returned the premium paid by appellee to it and refused payment of the claim, because of the forfeiture provisions above quoted. This likewise was a defense made by the company on the trial of the cause.

By supplemental petition appellee alleged a waiver of the forfeiture by a course of dealing between the agent of the company who wrote the insurance and appellee, whereby appellee was led to believe that a strict compliance with the provisions of the policy and the note with respect to the payment of the installments would not be insisted upon. The evidence offered on the trial by appellee in support of this plea, briefly, is that Mr. Foster, the local agent of the company, had been in the insurance business at the time this policy was issued only about two years; that this was the only insurance that the agent had written for appellee during this time; but the agent several years before had been in the insurance business, at which time he, as agent, wrote insurance for appellee and for a number of years handled the insurance of appellee. During all that time the agent would send appellee bills for his premiums and he would always pay them. Most of the time they were paid after the premiums were past-due, but the agent never permitted the insurance to lapse. It is shown in this connection that the agent did not represent the appellant during that time, and that the appellant had never carried insurance for appellee prior to the policy sued upon. With respect to the negotations between the agent and appellee leading up to the issuance of the policy sued upon, appellee testified:

"Q. * * * And do you know how long Bob Foster has been in business for himself since he—since the firm of Foster and Latta ceased to be? How long he has been in business for himself or partners with Miss Burton Edwards, about how long? A. About two years, I think.

"Q. About something like two years? A. That is just an estimate.

"Q. All right, just an estimate. Now, Mr. Clark, at the time you purchased that policy fom R. H. Foster here in Cooper, about May 2, 1934, just detail to the jury what transaction you had with Mr. Foster in connection with the policy at that time. A. Mr. Foster solicited my insurance business; I didn't have any insurance at that time.

"Q. The question there, please, sir, how long had you been without insurance, Mr. Clark? A. About two years.

"Q. About two years? A. And he suggested, oh, probably, he outlined the form of insurance that I should carry, and suggested this five-year policy to me, and that is the form of policy that was written, making—

"Q. All right, did you have any conversation with reference to how the premiums were to be paid, if so, what? A. Yes, sir. * * *

"Q. Just tell what transpired between you at the time the policy was written, Mr. Clark, if anything. A. Well, the first premium was to be paid in cash, and the next to be paid in annual installments with a note given covering—one big note covering all those installments. The discussion arose about the cost, which I thought was too great; I thought I could buy it, I thought I could buy that insurance at the same rate on the three-year policy.

"A. I was just merely trying to state why I was willing to pay this excessive premium which I think is high, and he explained to me I had better protection, and to buy the five-year policy giving a premium note covering the full five years. There was no danger in the lapsing in premium, if you got over a short period you wouldn't be—

"Q. What do you mean if it gets over a short period? A. He broke it up in to four small notes and one large note.

"Q. And then if one of the annual premiums should not be paid at the time it should what would you do? A. At the time it should come due you wouldn't lost the policy.

"Q. Mr. Foster made that statement to you? A. Yes, sir, and other agents here in Cooper at the time other policies were written."

Under the plain provisions of this policy and the note, the insurance had lapsed at the time the damage was done for the failure of appellee to pay the May 1st installment due on the note. Almost identical provisions of the tornado policy were considered by the Commission of Appeals in the case of Home Ins. Co. v. Puckett, 27 S.W.(2d) 111, and were there held to be binding obligations upon the parties to the contract.

The judgment in this case is based upon a waiver by the insurance company of the forfeiture for failure to pay the installment on the note when it was due. Appellant on this appeal challenges the sufficiency of the evidence to sustain the finding that there was a waiver by the company. It is our opinion that the evidence is not sufficient to establish a waiver of the forfeiture by the company. In the first place, any understanding which appellee might have had with Mr. Foster, the agent of the company, at or before the time the insurance was effected, which should have authorized appellee to pay the installment on the note other than as provided in the policy, would not be binding upon the company. And a waiver could not be based thereon. This is true because of the limited authority of the agent, it appearing that his authority was limited to taking the application and sending it in to the home office where the policy was written and returned to him for delivery, and he collected the first premium. The other premiums were payable at the home office, although the agent had the authority to accept for transmittal subsequent premiums if a policy holder should request him to do so. Bankers Lloyds v. Montgomery (Tex.Com.App.) 60 S.W. (2d) 201; American Nat. Ins. Co. v. Huey (Tex.Com.App.) 66 S.W.(2d) 690.

Neither is there evidence of a custom of dealing between appellee and the agent of appellant which would justify a waiver on that. ground. The evidence is to the effect that this is the only policy this company ever had with appellee and the forfeiture was upon the first installment to become due on this note, and therefore no custom of dealing on the part of the company or its agent could have been established prior thereto which would have led appellee to believe that a strict compliance with the terms of the policy would not be insisted upon. It is true that twelve or fifteen years before this policy was issued Mr. Foster had been in the insurance business and he carried insurance of appellee, and, according to appellee's evidence, handled the matter of collecting premiums in such a way that appellee was not required to pay the same promptly when due. But, it is believed, this evidence would not be binding upon appellant when it was not shown that Mr. Foster was its agent at the time or that it carried the insurance on appellee's property.

The judgment of the trial court is reversed and the cause remanded.