**RESERVE LIFE INSURANCE COMPANY,**
Appellant,

v.

**H. T. WILKINS et ux., Appellee.**

No. 6474.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 28, 1955.

Rehearing Denied April 11, 1955.

Barry, McCleery & Humphreys, Dallas, for appellant.

Campbell & Brock, Lubbock, for appellees.

NORTHCUTT, Justice.

This is an action brought by H. T. Wilkins and wife, Bertha Wilkins, against Reserve Life Insurance Company to recover under the terms of an insurance policy for hospital and surgical expenses resulting from sickness of H. T. Wilkins. For convenience, the parties will hereafter be referred to as plaintiffs and defendant as they were in the trial court. Plaintiffs pleaded that on October 23, 1950, the defendant issued its policy of insurance in favor of Hubert T. Wilkins (same person as H. T. Wilkins) and expressly agreed to pay him any hospital and surgical expenses *"for loss caused by hospital and other specified expenses resulting from sickness, the cause of which originated while the policy is in effect and more than fifteen days after the* date hereof hereinafter referred to as such sickness; and" (Emphasis ours). The plaintiff then pleaded the amount of the premiums and alleged that they had all been paid.

The plaintiffs further pleaded on April 12, 1954, that H. T. Wilkins was stricken with a kidney stone ailment as diagnosed on said date and on April 20, 1954, a surgical operation was advised and performed at the Methodist Hospital in Lubbock, Texas and then alleged the necessary and customary charges for such operation and that due proof of same was made to defendant but defendant refused to pay the same. By trial amendment, plaintiffs pleaded on additional expense of $100. Plaintiffs sued to recover the aggregate amount of the hospital and surgical expenses, 12% penalty and reasonable attorneys' fees.

After the above-mentioned pleadings, the plaintiffs pleaded in the alternative for recovery of premiums paid by them in the sum of $277 because of misrepresentations made by the soliciting agent plus a reasonable attorneys fee of $150 and for cancellation of the policy. The pleadings upon which plaintiff sued to recover the premiums paid were as follows:

"On the date aforesaid the defendant issued him and his said wife, as beneficiaries a policy of insurance agreeing to pay hospitalization and surgical expenses for the consideration of a quarterly premium of $19.40, plus a registration fee of $6.00 for a period of three months from said date and to continue said policy in force and effect for the quarterly premium of $19.40 to be *apid* every three months after October 23, 1950. *The term and provision of said policy are alleged in the first cause of action first set out.* (Emphasis ours.) Said plaintiffs continued and did pay all premiums quarterly as they matured and paid the last quarterly premium on or before April 23, 1954. All such payments were accepted by the defendant. Said policy was in force and effect at all times pertinent, nevertheless, they arbitrarily failed and refused to pay

the hospitalization and surgical expense, aggregating $264.55 on a claim they said defendant was not obligation to pay such expense. At the time of the policy and at all times pertinent said defendant lead plaintiffs to believe that such hospitalization and surgical expense would be paid when and if incurred and due proof made. It has so represented to them on many occasions that all such expenses would be paid. Plaintiff says it was never the intent or purpose of defendant to pay such expenses; that its main intent and purpose was to collect from him the premiums as aforesaid, aggregating $277.60 and then find a pretext to not pay the hospitalization and surgical expenses.

"In this connection plaintiffs show they have not made any misrepresentation or misstatement of any fact to induce defendant to issue such policy of insurance; indeed they say that their health was as originally stated to defendant at and prior to the *insurance* of the policy and to the effect that they were in good health. Neither of them were ailing with any ailment that was not made known to the defendant. They were not than suffering from any ailment affecting their general health or constitution. They were in normal health at all times except the above mentioned kidney stone or bladder stone ailment and for which said H. T. Wilkins received hospitalization and surgical treatment. Therefore, for reason of such facts, plaintiffs are entitled to recover the premiums paid defendant and in addition thereto a reasonable attorney's fee.

"They show in this connection that defendant has repudiated its contract and policy of insurance and had failed and refused to refund the premiums paid. Such failure and refusal has necessitated this suit to recover same and have the contract of insurance cancelled. It was necessary and proper for plaintiffs to employ attorneys to file this suit and they have done so. A rea-

sonable attorney's fee is the sum of $150.00."

The defendant made a motion for an instructed verdict but the same was overruled and the case was submitted to a jury upon four special issues. Said issues and answers of the jury were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the cause of the sickness resulting in the medical care and hospitalization of the plaintiff Wilkins originated more than 15 days after October 23, 1950?

"Answer 'Yes' or 'No'.

"Answer: *no.*

"Gentlemen of the Jury, in connection with the above special issue No. 1, you are instructed that the word 'originated' as used in the above special issue in connection with the cause of sickness, has reference to an illness or medically recognized disease and not merely to a condition which might in the future give rise to a disease.

"Special Issue No. 2

"Do you find from a preponderance of the evidence that on or about October 18, 1950, that the plaintiff advised Mr. O. J. McClintock, the representative of the defendant Company, that he had had an attack of kidney trouble in August of 1950?

"Answer 'Yes' or 'No'.

"Answer: *yes.*

"Special Issue No. 3

"Do you find from a preponderance of the evidence that on or about October 18, 1950, that the representative of the defendant advised plaintiff that any kidney ailments which he might sustain after the policy had been in force 15 days would be fully covered by such policy?

"Answer 'Yes' or 'No'.

"Answer: *yes.*

"Special Issue No. 4

"Do you find from a preponderance of the evidence that on or about October 18, 1950, that the agent of the defendant wrote in the answer 'no' to the question of prior illness and hospitalization after plaintiff had advised him of his sickness in August, 1950?

"Answer 'Yes' or 'No'.

"Answer: *yes.*"

The plaintiffs moved the court for judgment in their favor in the sum of $513.29 (to recover under the policy) and in the alternative for the premiums paid in the sum of $277.60. The trial court was of the opinion that the plaintiffs were entitled to recover back the premiums paid by them in the sum of $277.60 and that the policy of insurance should be cancelled and granted judgment accordingly. From this judgment, the defendant has perfected this appeal. Hereafter the plaintiffs will be referred to as appellees and the defendant as appellant.

The appellant presents its appeal upon three points of error. Since we are of the opinion that the appellant was entitled under this record to an instructed verdict, we will consider only appellant's first point of error which reads as follows:

"The court erred in overruling appellant's motion for instructed verdict."

Appellees pleaded, by their supplemental petition as follows:

"H. T. Wilkins and wife reply to the Defendant's Amended Answer and show the Court: they deny that said H. T. Wilkins was suffering from an ailment which originated within fifteen (15) days after October 23, 1950. Some sixty (60) days previous to October 23, 1950, he had a slight ailment which Doctors advised him was probably a kidney stone. It only effected

him for a period not exceeding one day. He so advised defendant's agent at the time and before the policy was issued. There upon the agent assured him that the insuring clause (b) simply meant that if his kidney stone ailment, if it was a kidney stone ailment, did not manifest itself within fifteen (15) days that after that time if he was hospitalized his policy of insurance covered any hospitalization, Doctor bills, nurse hire, etc. This was a construction of the insurance policy by the Company and so to accept same was an*d* agreed construction of the insurance policy.

"In any event he says that his kidney ailment did not manifest itself until April 12, 1954. On said date he had an acute attac*h* and incurred the hospitalization expense sued for. From the date of the policy until his operation more than three (3) years and six (6) months he was strong, healthy and free of aches and pains. He was *use* to manual labor and worked regularly doing general repair work, carpenter work, mowing lawns, etc. During the time mentioned he regularly paid the premiums on his insurance on the faith and belief that in the event of hospitalization for any ailment that might manifest itself he had insurance to cover it as alleged in his original petition. Therefore, the defendant by its own construction of the policy of insurance and of its advice to him that he was covered by hospitalization is estopped to deny him recovery and further such acts constitute a waiver of any such defense. During all said period of time the defendant accepted the premiums of insurance with full knowledge of the facts related and asserted in its amended answer.

"Further plaintiff shows the Court that the alleged kidney stone was dormant, merely petential, and that such did not manifest itself as an ailment in the average person. In other words, it

is a mere ailment that will not manifest itself, if ever, in the average person."

The appellees sued to recover upon this policy and pleaded as above set out that they were entitled to recover where the cause originated while the policy was in effect and more than fifteen days after the date of the policy. The appellees presented their claim under the policy containing the attending physician's report and the physician in that report stated that in his opinion, the basic cause of H. T. Wilkin's disability originated in August, 1950 and that the physician ordered hospital confinement of H. T. Wilkins on August 11, 1950. It was upon this report that appellant denied liability. It is clearly shown by the appellees pleadings and proof of claim presented to the appellant by the appellees that appellant was not liable under the policy for the expenses sued for, and neither did appellee show by proper evidence that the sickness did not originate in August, 1950 as his physician had stated.

Then the only question remaining is whether appellees are entitled to recover the premiums paid by them. Appellees introduce the policy sued upon as their first exhibit and said policy provided:

"2. No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon."

When the appellees received the policy, they did not have to accept the same if they were not satisfied with its terms and it did not provide the things the agent represented that the policy would contain and they could have returned it to the appellant; but, after accepting the same as was done in this case, the policy became the contract of the parties and the appellant was bound to perform as provided for in said policy.

Appellees introduced in evidence (Exhibit 2) their receipt showing what they were to be insured against and this receipt provided:

"Sickness—covered if originating more than 15 days after date of policy, except that sickness resulting in an operation within 6 months from date of policy not covered as to surgical fee, expense of operating room and anesthesia."

There are no pleadings nor evidence herein to show that the appellant was ever notified of any representations made by the agent taking the application for said insurance policy or that appellant ever acquiesced in the misrepresentations if any were made. It is provided in Art. 21.04 of Vernon's Civil Statutes of the State of Texas Insurance Code, that:

"Such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

Where an insurance agent makes representations as to what a policy contains, the insured, when he receives the policy, must notify the company immediately that the policy does not contain the things as represented by the agent—and if the insured keeps said policy and does not notify the company he waives such representations and is bound by the terms of the policy. American National Insurance Co. v. Huey, Tex.Com.App., 66 S.W.2d 690; Darnell v. Southwestern American Insurance Co., Tex.Civ.App., 240 S.W.2d 509.

Appellant's first point of error is sustained. Judgment of the trial court reversed and rendered that the appellees recover nothing by their cause of action. Reversed and rendered.