The judgment of the Court of Civil Appeals is affirmed.

CULVER, J., dissents in this opinion.

SMITH, Justice (concurring).

I am in agreement with the holding in this case; however, I am not prepared to agree with the conclusion in regard to the case of Gulf, C. & S. F. Ry. Co. v. Deen, Tex.Civ.App., 275 S.W.2d 529, that "We agree with the Court of Civil Appeals that the verdict of the jury and the undisputed evidence establish that the railroad furnished one reasonably safe way to do the job and therefore was under no duty to furnish a second method of performing the work." I, therefore, do not join in the conclusion reached as to the Deen case. In all other respects, I agree with the majority opinion.

**L. O. GLEASON, d/b/a Alice Pipe and Supply Co., Petitioner,**

v.

**Wesley DAVIS, d/b/a Davis Well Service, Respondent.**

**No. A–5289.**

Supreme Court of Texas.

March 21, 1956.

Rehearing Denied May 2, 1956.

Lon D. Herbert, Alice, for petitioner.

Kelley, Looney, McLean & Littleton, Sidney Farr and Ralph Alexander, Edinburg, for respondent.

BREWSTER, Justice.

This is an action by bill of review to set aside a default judgment taken by Gleason against Davis, on a sworn account. The trial court judgment, favorable to Davis, was reversed by the Court of Civil Appeals and the cause remanded. 277 S.W.2d 125, 127.

The default judgment was rendered for rental of a pump and 1,601 feet of drill pipe that had been ordered delivered to Davis at San Antonio. Davis admitted that he was served with process on March 19, 1954, but filed no answer. On May 25, 1954, he learned for the first time that the judgment had been rendered, and this was after the term had expired. He filed this suit four days later.

When Davis was served with citation in the first suit he asked one Finch, a non-lawyer friend, to get in touch with Gleason and find out whether the suit could be amicably settled. Finch called Gleason's office; some girl answered the phone and advised Finch to call another number, which he did. The woman who answered this last call told Finch that Gleason was dead and that someone from his business would contact Davis in regard to the suit. Davis says he believed this and did not file any answer. The trial court found that Davis' failure to file answer was, therefore, the result of "mistake and accident induced by the acts and misrepresentations of Defendant Gleason and his agents found above, or by someone Davis thought was Gleason's agent."

The trial court also found that Davis "was without fault and negligence in being misled and not filing his answer in Cause No. 9907." (The original suit.)

These findings resulted in a judgment setting the default judgment aside and enjoining execution. On appeal the Court of Civil Appeals first reversed and rendered in favor of Gleason, but on rehearing remanded the cause, on suggestion that appellant offered no point of no evidence. Our courts have been rather liberal on the matter under consideration, and have been slow to rule an alleged error out on the ground that it is not sufficiently presented by point of error, and this attitude existed before as well as after September 1, 1941, the effective date of our court-made rules of procedure. Before that date the applicable statute was Art. 1844, R.C.S. 1925, which declared that the appellant could embody in his brief in the appellate court all assignments of error distinctly specifying the grounds on which he relies. "All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of the Court to the error complained of." Illustrative of this liberal attitude is the following quotation from Lang v. Harwood, Tex.Civ.App., 145 S.W.2d 945, 947 (no writ hist.): "It has long been the policy of this court to apply the most liberal construction in favor of

the sufficiency of the brief and to give effect thereto, if it is possible for us to ascertain either from the assignment, proposition or statement and argument the point intended to be presented thereby. * * * The Supreme Court has likewise pursued a liberal policy in the construction of the rules with reference to briefs." This case cites Thraves v. Hooser, Tex.Com.App., 44 S.W.2d 916, as a supporting authority.

A leading case under Rule 418, T.R.C.P., is Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482, wherein it is said: "The object of a 'point' in the brief, as provided for in Rule 418, is to call the Court's attention to the questions raised and discussed in the brief. It is intended that the 'point' shall be short or in few words. It is not necessary that a 'point' be complete within itself, in the sense that it must, on its face, show that the matter complained of presents reversible error. If a 'point' is sufficient to direct the Court's attention to the matter complained of, the Court will look to the 'point' and the statement and argument thereunder to determine the question of reversible error. Simply stated, the Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder."

A recent decision by this Court is Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286, 292, holding that a point of error which stated that the trial court "erred in its finding that the attorney for the taxing agency had notice of any interest claimed by the plaintiffs, such finding not having sufficient support in the record", would be treated, "under our liberal briefing rules", as though it was sufficient to raise the question of "no evidence".

In the case at bar petitioner asserts that the Court of Civil Appeals erred in reversing and remanding it on motion for rehearing, instead of rendering it, as the court did on original hearing. This was done on the ground that appellant had no point of no evidence. Appellant contends that by a liberal construction of Rule 418 he had raised the question of no evidence,

in his statement under Point 2 of his brief in the Court of Civil Appeals, as well as in his argument and authorities under that point.

We have concluded that Point 2 together with the statement and argument thereunder in appellant's brief in the Court of Civil Appeals were sufficient to present the point of "no evidence" to show that Davis was without fault or negligence in failing to answer Gleason's suit.

The only testimony in the record bearing on the issue of no negligence is summarized in the trial court's findings of fact as follows: "Finch (who was representing Davis in an attempt to settle the original suit) called defendant's place of business in a day or two (after Davis had been served with citation) and the girl who answered the phone at defendant's place of business referred the plaintiff to another phone number which Finch called that night. The woman who answered the second phone number told Finch that the defendant had died and that someone from defendant's business would contact Finch in regard to this suit. This information was conveyed to Plaintiff by Finch."

Gleason had "seasonably objected" to this finding because "there is absolutely no evidence whatever in this record to support such finding insofar as such conclusion infers that any actions or representations of Gleason or any of his agents, identified as such, were ever made to Davis or any of his agents after the filing of Cause No. 9907."

■ We hold that the question of no evidence was thus sufficiently raised to require that it be decided.

We hold also that the Court of Civil Appeals correctly held in its first opinion that there was no evidence to support the trial court's judgment. We quote and approve the following from its opinion:

"We have read the entire statement of facts and are of the opinion that the findings and conclusions are unsupported by the evidence. After Davis was served, his agent, Mr. Finch, consulted an attorney in San Antonio, who advised him that he 'should get somebody at Alice or down here to represent Mrs. Davis.' Several days later, Finch put in a long distance call from Lytle, Texas, to Gleason in Alice. He talked with his office and a lady told him that Gleason was out of the city. Finch inquired where he could reach Gleason by phone and, according to Finch, Gleason's office manager referred him to another phone number in Alice. That night he placed a long distance call to Alice from San Antonio. No testimony shows whether the number was Gleason's business phone or merely a place where he might temporarily be reached. An unknown lady answered the phone, who apparently did not give her name. Finch could not identify her. After making a search in the phone book, he could not recall the phone number, nor find a place of business that appeared familiar. The conversation did not help identify the phone number, the business nor the person with whom Finch conversed. The lady stated that Gleason was dead. In fact, Gleason was not dead. Finch testified, when he was told that Gleason was dead, 'then I said that I would talk to her and when I got to talking to her she did not know a thing about the lawsuit but said that she would check into it and she mentioned a fellow by the name of Adcock or Hitchcock, or something like that, *whom I would have to see.*' Finch repeated in his testimony: '* * * she did not know a thing about the lawsuit.' He then stated: 'Well, of course, at that time I naturally talked to her, thinking that Joe Gleason had passed away, and that she had a manager that she wanted to talk to or somebody, and *she mentioned this Adcock or Hitchcock that I would have to see.*' Finch was then asked: 'Did you get in touch with him?' To that question he answered: 'No, sir, *I never did do anything more about it.* The way I understood it was that she would have somebody get in touch with me as I told her where I was at. Whoever this woman was I don't know but I tried to find the number I called, however, I cannot locate it, *but I do remember that she said I would have to*

*see Adcock or Hitchcock*. That is as near as I can remember who this woman told me that I would have to see.'

"This conversation was reported to Davis, and thereafter neither Davis, nor his agent, Finch, did anything. They did not call back to Gleason's regular business phone. Though the lady disclaimed authority and positively told him that he would need to contact a person named either Adcock or Hitchcock, neither he nor Davis . followed those instructions. Had they done so, they would have learned that Gleason was not dead, and also that Adcock was Gleason's competitor rather than his agent. The conversation, taken at full value, as related by Finch, the agent for Davis, instead of relieving them of duty, imposed a duty upon Finch and Davis which they did not pursue. Though asked the direct question three times, Finch never went so far as the court's finding, to say that the lady represented that no steps would be taken in the pending suit. The record shows that Davis disregarded the advice of an attorney, failed to do the things required by an unknown person at an unknown number, which was not a regular business number, and that the person called, instead of engaging upon a conversation of mutual concern, disclaimed any knowledge at all of the lawsuit." 277 S.W.2d 125, 126.

██ The general rule is that while it is necessary to the admission of testimony as to the contents of a telephone conversation to establish the identity of the person with whom the witness talked, such identity is regarded as established if the witness says he identified the voice of the person with whom he talked. Or, if a call is made to a business office over a line maintained by it for business purposes, the conversation will be admitted if such person represents that he is the person called and is one authorized to take the message, in the absence of proof to the contrary. Spolane v. Coy, Tex.Civ.App., 153 S.W.2d 672, (no writ hist.). And see Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771. Also, if the message reveals that the speaker had knowledge of facts that only the speaker would be likely to know, authenticity will be regarded as established. McCormick on Evidence, Sec. 193. Here Finch talked on the telephone with a woman in Gleason's office and was told that Gleason was out of the city; but she told him to call another number, which he did, and was given the false information that Gleason was dead. She knew nothing whatever about the lawsuit. Neither was she identified by voice or otherwise.

Gleason testified that Melida Garcia had been his secretary for 15 years; that neither she nor his wife had reported to him any call by phone from either Davis or Finch since the suit against Davis had been filed; that there was no other girl working in his office. Miss Garcia testified that nobody had phoned her about any suit between Gleason and Davis; that she never told anybody that Gleason was dead; and that she did not tell anybody that no action would be taken in the lawsuit until somebody talked to Davis.

██ We hold, therefore, that the alleged telephone conversations have no probative force, from which it follows that there was no evidence justifying Davis in not looking after the suit then pending against him.

The judgment below is reversed and judgment rendered for Gleason.