F. H. VAHLSING, INC., Appellant,

v.

Lloyd M. READHIMER, Appellee.

No. 7178.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 15, 1962.

Rehearing Denied Nov. 12, 1962.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

John B. Stapleton, Floydada, for appellee.

CHAPMAN, Justice.

This is an appeal by F. H. Vahlsing, Inc., hereinafter referred to as appellant, Vahlsing, or the corporation, from a judgment of the trial court sustaining venue in Floyd County on an action filed by Lloyd Readhimer seeking to recover upon an alleged oral contract he had with appellant whereby the latter would furnish onion plants; appellee would set them out, would water, cultivate, and fertilize them; and Vahlsing would harvest and market the onions. Appellee alleged he entered into the contract with C. W. Duncan in Floyd County with Duncan acting on behalf of appellant; that the net proceeds from the sale of the onions, after deducting $.85 per sack for certain services rendered by appellant, would be divided on the basis of 80 per cent to appellee and 20 per cent to appellant; and that the onions were in fact raised, harvested, and sold and the net proceeds to him on the basis of 80 per cent would have been at least sixty-eight hundred dollars ($6,800.00).

The corporation filed its plea of privilege to be sued in Hidalgo County, the county of its corporate residence. The plea was duly controverted and venue alleged to be in Floyd County under Subdivision 23 of Article 1995 Vernon's Ann.Tex.Civ.St., the pertinent part of which provides suits may be brought against a private corporation in the county in which the cause of action or part thereof arose. The trial court, after hearing the testimony of three witnesses for appellee, overruled the plea of privilege. Appellant offered no testimony.

Appellant contends a cause of action was not proved anywhere, because appellee depended upon a percentage of the net proceeds for recovery and no proof was made that any monies were received. It also contends that any contract relied upon was made, if made at all, in Mathis, outside of Floyd County. Much of appellant's contention that a cause of action was not proved depends upon its theory that certain telephone conversations between F. H. Vahlsing of New York, president of the corporation, Mr. Stapp, his manager at Mathis, and Duncan were not admissible. The points are so related we shall not attempt to discuss them separately.

Appellee is a Floyd County farmer. In the spring of 1959 he made two trips to Mathis, Texas, near Corpus Christi, looking for onion plants to set out on his farm

in Floyd County. On the first visit he talked with Mr. Stapp, appellant's manager in that county. Mr. Duncan was also at the Vahlsing properties on the occasion, which was a large operation with two gins, a vegetable farm, and a large office with a sign at the farm reading, "F. H. Vahlsing, Incorporated." Mr. Stapp called F. H. Vahlsing person to person at New York by telephone from the Vahlsing, Inc. office. Appellee heard Stapp call him "Mr. Vahlsing" and heard him explain that Mr. Duncan was down there, as were two farmers from Floyd County, who wanted to make a deal for onion plants. Mr. Duncan then talked to the man he called "Vahlsing," and appellee testified he could tell from listening to the conversation at the Mathis end of the line that Duncan was to look after the Vahlsing interests in Floyd County. The following testimony was without objection except that it was hearsay.

"Q. Did they discuss as far as you could tell over the telephone who was going to look after the F. H. Vahlsing Company's interest in this contract in Floyd County?

"A. C. W. Duncan.

"Q. And they had that conversation there?

"A. Yes, sir."

Mr. Duncan also told the man he called "Mr. Vahlsing" that he would need some expense money that night. Following the conversation, Mr. Stapp then wrote out a check to Mr. Duncan. Mr. Belt, another farmer with Mr. Readhimer, overheard the telephone conversation, and corroborated appellee with the exception that he said the call was made either to New York or to New Jersey.

Following the conversation over the telephone, the parties in the Vahlsing office at Mathis then discussed the type contract they would enter into for the onion plants. Stapp and Duncan discussed it, and Stapp then told the farmers the Vahlsing corporation would furnish the plants; the farmers would set them out on their farms, would water, cultivate, and fertilize; and Vahlsing would then take over when they were ready to harvest. Eighty-five cents ($.85) per sack would be deducted for expense of grading, sacking, brokerage, etc. Then the remainder would be divided 80 per cent to the farmers and 20 per cent to Vahlsing. Appellee a few weeks later flew down with another farmer to the Vahlsing operation at Mathis and Mr. Vahlsing was there at the farm. They discussed the contract again on the same basis. The testimony shows:

"Q. Did you discuss with Mr. F. H. Vahlsing whether or not the farmers would enter into a contract?

"A. Yes, sir. After we got back there and we got the plants and they said—Mr. Vahlsing said that they would send some contracts out of Hereford over there and let each farmer that went into contract—I mean that wanted to put out the onions go into contract.

"Q. And who did he say if anyone, would represent F. H. Vahlsing Company?

"A. C. W. Duncan.

"Q. Entering into those contracts?

"A. Yes, sir.

"Q. Did you enter into any contract, specific contract, with Mr. F. H. Vahlsing while you were down there?

"A. No, sir.

"Q. At Mathis, Texas, when you saw him on that occasion?

"A. No, sir."

With respect to the contract finally entered into the testimony is as follows:

"Q. Now, I thought I understood you to testify a moment ago that Mr. Vahlsing said that you would make your contract with C. W. Duncan, is that right?

"A. Yes, sir.

"Q. For the Vahlsing Company?

"A. Yes, sir.

"Q. Did you have any conversation with Mr. Duncan with reference to planting any onions?

"A. Yes, sir.

"Q. And with reference to your own situation just tell us what that conversation was, how many acres of onions you were to plant, what you were to get, what you were to be furnished and all that sort of thing?

"A. They—F. H. Vahlsing Company was going to furnish the plants—

"Q. Tell us what Mr. Duncan said to you and what you said to him.

"A. Well, Mr. Duncan told me that F. H. Vahlsing Company would furnish the plants if we would set them out and harvest—I mean and cultivate them and fertilize them and water them up to the time of harvest * * *

"Q. All right, sir. Who was to take over at the time of harvest, if anybody?

"A. F. H. Vahlsing Company.

"Q. What were they to do?

"A. They were supposed to—they were going to harvest the onions, bring them into Lockney to the grader and grade them for $.85 a sack, that included the brokerage too.

"Q. What did C. W. Duncan say about who would market the onions, sell them?

"A. F. H. Vahlsing Company.

"Q. Did he tell you that?

"A. Yes, sir.

"Q. All right, sir. Based upon his conversation with you there in that respect what did you say you would do, if anything, about planting any onions?

"A. I told him that I would take enough plants to set out about 11 acres.

"Q. On the basis that he had been talking about?

"A. Yes, sir.

"Q. Did or not F. H. Vahlsing, Incorporated, deliver you any onion plants?

"A. Yes, sir.

"Q. Where? In Floyd County, Texas?

"A. To the onion shed in Lockney.

"Q. Did you or not pursuant with your conversation with Mr. Duncan there plant any onion plants?

"A. Yes, sir.

"Q. How many acres?

"A. About 11 acres."

Appellee raised the onions, plowed them out of the ground, and Latin Americans employed by Duncan for Vahlsing, Inc., hauled them to the sheds where they were graded, sacked, and hauled away. The Latin Americans found it necessary to sue appellant to recover for part of their labor in that connection, and we sustained a lower court judgment on October 1, 1962, in Cause No. 7174 holding appellant liable for that labor. Vahlsing defended that action on the ground that Duncan was an independent contractor. We sustained the jury finding that Duncan was acting for Vahlsing.

As part of the harvesting of the onions in 1959, Eligiro Adames testified he entered into a contract with Mr. Duncan acting for Vahlsing, Inc. to run the corporation's packing shed. He testified he had known F. H. Vahlsing since 1938 and recognized his voice from New York when he talked with him from the Vahlsing tele-

phone at Lockney. The Readhimer onions were part of the onions Adames graded and sacked in the summer of 1959.

▮▮▮ Under this record we hold the testimony given concerning the conversations over the telephone was admissible. There could be no question whatever of the admissibility of Adames' testimony, because he had known F. H. Vahlsing personally for 21 years and recognized his voice. Gleason v. Davis, 155 Tex. 467, 289 S.W.2d 228. When the subsequent events concerning the onion contract following the telephone conversations are taken into consideration, we believe Mr. Vahlsing was also sufficiently identified in the other telephone conversations to make the testimony complained about admissible. Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771. Additionally, the material portions of the telephone conversation were had personally at the farm between Mr. Vahlsing and Mr. Duncan later at the Vahlsing farm in Hidalgo County and appellee testified he heard Mr. Vahlsing tell Mr. Duncan he would let him manage the onion operation in Floyd County for F. H. Vahlsing and Company. There was no objection whatever to that testimony. Under Rule 434, Texas Rules of Civil Procedure no possible harm could have resulted to appellant from the testimony given concerning the telephone conversation when the record is considered as a whole. From the statement of facts quoted above there was positive testimony that appellee did not enter into a specific contract at Mathis with Mr. Vahlsing or anyone authorized to act for him there. There was no agreement or even discussion on the number of acres appellee would set in onions. The testimony shows that agreement was had between appellee and Mr. Duncan in Floyd County, the latter acting for Vahlsing in the final meeting of the minds. No written contract was ever furnished by Vahlsing, as the testimony indicates he promised to do, but there is an abundance of probative evidence by which the court could have impliedly found the oral contract was consummated in Floyd County. The record shows Vahlsing then delivered the onion plants to Floyd County; they were raised, graded, and sacked in Vahlsing sacks in Floyd County; Vahlsing hired laborers to harvest them; the truckers hauling the onions to the shed used tickets bearing the name "F. H. Vahlsing, Inc."; and they were shipped from Floyd County on shipping tickets bearing the name "F. H. Vahlsing, Inc." The testimony further shows without contradiction that the onions were a very good grade, and the market price for onions of that quality at the time they were shipped was $3 per sack. Only $.85 per sack had to be deducted, leaving $2.15 per sack unaccounted for. Appellant has not paid appellee any part of that $2.15 per sack and has never accounted to him where any of it went. He simply hauled the onions away; and so far as this record is concerned, appellee has had no word from him since. The contract provided appellant was to pay him 80 per cent of the net proceeds. Under this state of the record and for the purpose of the venue question, we believe there is sufficient probative evidence from which the trial court could have impliedly found that a part of the transaction creating both the primary right and the part of the transaction which violated that primary right arose in Floyd County. Loessin & Herndon, Inc. v. Coffield Lumber Company, Inc. et al., Tex.Civ.App., 280 S.W.2d 796 (writ refused); Alamo Products Company v. French, Tex.Civ.App., 316 S.W.2d 765 (NWH); Stone Fort Nat. Bank of Nacogdoches v. Forbess, 126 Tex. 568, 91 S.W.2d 674; Stull's Chemicals, Inc. v. Davis et al., Tex.Civ.App., 263 S.W.2d 806 (NWH); French Drilling & Well Service v. Wilson Manufacturing Company, Inc., Tex.Civ.App., 307 S.W.2d 624.

▮▮▮ Upon a trial on the merits, appellee in order to recover will have the burden of proving the amount of his 80 per cent of the net proceeds. It is unnecessary to be that specific here so long as he has proved he has a cause of action. Victoria Bank &

**610**

Trust Co. v. Monteith et al., 138 Tex. 216, 158 S.W.2d 63; Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91. We have already said we believe he has met that burden here.

Accordingly the judgment of the trial court is affirmed.