Wynona **HARRISON**, Appellant,

v.

The **TRAVELERS INSURANCE COMPANY**, Appellee.

No. 17305.

Court of Civil Appeals of Texas.

Dallas.

May 23, 1969.

Hal Potts, of Fanning & Harper, Dallas, for appellant.

John Copeland and John A. Gilliam, of Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

DIXON, Chief Justice.

This suit was filed by appellant Mrs. Wynona Harrison (formerly Mrs. Wynona Harper) against appellee Travelers Insurance Company for damages, or in the alternative, for reformation of a health insurance policy.

In an amended petition appellant alleges that following the death of her husband, who was an insured under an employer's group policy, she applied for and received a converted individual family health insurance policy from appellee. She had been told by her deceased husband's former employer that the individual policy would afford the same family health coverage as the group policy. The individual policy as issued provided less benefits than the group policy.

Appellant does not allege fraud on the part of appellee. She does allege negligence and mistake.

The trial court rendered a summary judgment in favor of appellee that appellant take nothing by her suit.

The record before us consists of the pleadings of the parties, defendant's answers to interrogatories and affidavits supporting and opposing the motion for summary judgment.

Appellant's husband, Woodrow W. Harper, an employee of Aero Instrument Supply, Inc., was insured by appellee under a Group Insurance Policy. On or about July 25, 1965 appellant's husband died. The group policy provided for both life and health insurance. We are concerned here only with its health insurance provisions.

Among the health benefits provided by the group policy was "Major or Comprehensive Medical Expense," limited to $10,000.

The group policy also provided that upon the death of an insured his surviving wife should have the privilege of obtaining from the insurer, *"without further evidence of insurability,"* an individual family health policy within thirty-one days after the termination of the group policy coverage. (Emphasis ours.) It was expressly stated in the group policy that the form of any individual policy so issued, the coverage thereunder, and all other terms and conditions thereof, should be as provided by the rules of the insurer at the time of the application for the individual policy.

On the face of the group policy certificate was this recitation:

## "NOTICE TO EMPLOYEE"

"If you should cease active work for any reason, you should consult your Employer immediately to determine what arrangements may be made to continue your insurance benefits in force so that you will be able to exercise any rights you may then have under the group policy as outlined in this Certificate. *For further details, see the policy provisions entitled 'Termination of Insurance' and 'Conversion Privilege' and 'Privilege of Obtaining Individual Insurance' herein set forth."* (Emphasis ours.)

Some time prior to September 1, 1965, Victor Ressler, President of Aero Instrument Supply, Inc. called appellant and suggested that the family hospitalization coverage under the group policy be changed to an individual policy pursuant to the conversion privilege afforded by the group policy.

Appellant says she asked Ressler whether the benefits would be the same. His answer, as near as she could recall it, was, "You will have the same Policy; only you will be billed and pay for the premiums personally, rather than the company paying them for you as before."

Thereafter appellee at Ressler's request forwarded to him a "conversion kit," which included an application form for an

individual policy. Later appellant went to Ressler's office and signed the application for the new policy. While she was in Ressler's office the question of identical benefits was again discussed. Appellant says Ressler called appellee's representative by telephone and discussed the question. Ressler then reported that appellant and her two children would have the same benefits as under the group policy.

In his affidavit Ressler stated:

"Mrs. HARPER asked me whether the coverage would be the same as under the company Group Policy. While she was sitting in my office, I called the TRAVELLERS (*sic*) representative—I do not recall his name, as there have been several changes in personnel with whom I dealt at that office—and asked him the questions Mrs. HARPER had raised. I was told in words to the effect that she and the children would have the same coverage as under the Group Policy, only the method of premium payment would

change. I relayed this information to Mrs. HARPER."

The application is signed by appellant and "Certified for Policyholder" by Ressler as President of Aero Instrument Supply, Inc.

The application contained these recitations: "Benefits requested are those specified in Item 6 of Part A of this application for the plan checked below. * * * Applicant understands that benefits provided under any policy issued on this application are subject to the limitations stated in Item 6." Appellant requested the benefits specified in Plan III. Appellant's application does not include a request for "Major or Comprehensive Medical Expense," limited to $10,000.

Afterward appellee issued its Policy No. GC(2) 7036 dated September 1, 1965, which is designated on its face as a "Family Converted Policy." It provides coverage for appellant and her two children as follows:

"Plan III"

|  |  |  |  |
|---|---|---|---|
| "Part I. | Hospital Benefits | (Maximum Daily Hospital Benefit .... | $15.00 |
|  |  | (Maximum Number of Days .......... | 70 Days |
|  |  | (Limit of Miscellaneous Expenses ...... | $150.00 |
| Part II. | Surgical Benefits | (Maximum Surgical Benefit .......... | $300.00" |

The above described coverages are exactly the same as the coverages requested in appellant's application.

The individual policy issued to appellant recites that the policy, including the application of the insured, constitutes the entire contract of insurance, and that no agent has the authority to change the policy or to waive any of its provisions.

Appellant received the individual policy and continued to make the quarterly premium payments until July 1967. She then refused to pay any more premiums because appellee denied payment of "Major or Comprehensive Medical Expense" Limited to $10,000, for appellant's daughter, who

had been injured in an automobile accident on or about February 28, 1967.

OPINION

In her first point of error appellant says that a genuine issue of material fact exists as to whether Victor Ressler was acting as agent for appellee when he told appellant that the benefits under the individual family policy would be the same as those under the employees' group policy in which her husband had been the insured.

Authorities are divided in the various jurisdictions on the question whether an employer in a group policy acts as agent for the insurer or for the insured employee. Appellee cites Boseman v. Connecticut

General Life Ins. Co., 301 U.S. 196, 57 S. Ct. 686, 81 L.Ed. 1036 (1937), a case which originated in Texas. The Supreme Court of the United States held that the employer is the agent of the insured employee, not the insurer. However the above case and others cited to us involve an insured employee and the insurer in a group policy itself. They do not involve the relationship between an insured and an insurer in a converted individual policy.

■ We are persuaded that if we were to hold that Ressler was acting as appellee's agent (we do not so hold) we would still be compelled to hold that he could at most be considered only a limited or special agent, analogous to a soliciting agent. As such he would not have authority to bind appellee as to risk, coverage or waiver of conditions. American National Ins. Co. v. Huey, 66 S.W.2d 690 (Tex.Comm'n App.1933); Reserve Life Ins. Co. v. Wilkins, 278 S.W.2d 904 (Tex.Civ.App., Amarillo 1955, no writ); State Farm Mutual Automobile Ins. Co. v. Chatham, 318 S.W. 2d 684 (Tex.Civ.App., Dallas 1958, no writ); Mutual Life Ins. Co. of New York v. Anderson, 408 S.W.2d 335 (Tex.Civ. App., Dallas 1966, writ ref'd n. r. e.); Reeves v. New York Life Ins. Co., 421 S. W.2d 686 (Tex.Civ.App., Dallas 1967, writ dism'd); Dugan v. General Accident Fire & Life Assurance Corp., 421 S.W.2d 717 (Tex.Civ.App., Houston 1967, writ ref'd n. r. e.).

■ Appellant points to the "NOTICE TO EMPLOYEE" paragraph in the group policy certificate, hereinbefore copied in full, as proof that Ressler was acting as appellee's agent. But with reference to the employee's rights in regard to conversion to an individual policy the notice by its express terms refers the employee to the policy provision entitled "Privilege of Obtaining Individual Insurance." Certainly the paragraph does not grant to the employer the authority to act as a general agent.

■ Appellant also places great store on the affidavits of appellant and Ressler to the effect that Ressler called the representative of appellee by telephone and was told that the individual policy would give the same coverages as the group policy. What Ressler says that someone said to him is hearsay. Ressler admits that he does not know the identity of the person to whom he talked. There is no evidence that the person making the statement was clothed with authority to bind appellee. Gleason v. Davis, 155 Tex. 467, 289 S.W.2d 228, 232 (1956). Appellant's first point is overruled.

In her next point appellant says that a fact question exists as to whether Ressler was acting with apparent authority in the making of representations concerning the subject contract of individual insurance. We see no merit in this point.

■ Existence of apparent authority is based on the principle of estoppel. It is to be determined by the acts of the principal, not by the acts of the agent. Bugh v. Word, 424 S.W.2d 274 (Tex.Civ.App., Austin 1968, writ ref'd n. r. e.); Mutual Life Ins. Co. of New York v. Anderson, 408 S. W.2d 335, 341 (Tex.Civ.App., Dallas 1966, writ ref'd n. r. e.); Minneapolis-Moline Co. v. Purser, 361 S.W.2d 239 (Tex.Civ. App., Dallas 1962, writ ref'd n. r. e.); Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050, 1052–1053 (Tex.Civ. App., Waco 1931, writ ref'd). We find no evidence of conduct on the part of appellee in this case which could lead appellant reasonably to believe that Ressler had authority to bind appellee by the representations in question. The "NOTICE TO EMPLOYEE" paragraph in the group certificate admonished an employee desiring a converted individual policy to see the policy provisions pertaining to the conversion privilege. The telephone call made by Ressler to an alleged representative of appellee seems to indicate that Ressler had doubts as to his authority and as to the correctness of his own representation. As we have said, the alleged reply of the unknown person to whom Ressler says he talked is hearsay, and is not binding on ap-

pellee. Appellant's second point is overruled.

The substance of appellant's third point is that there is a fact question as to whether appellant could have been issued an individual major medical policy by appellee.

In an affidavit in support of the motion for summary judgment L. J. Stroope, appellee's Assistant Claims Manager, undertakes to explain why appellee does not issue any type of individual major medical policy by conversion from a group policy. The reason he gives is that to obtain an individual major medical policy an applicant must satisfy the requirements of the underwriting department. This means that a medical history must be obtained from an applicant and her dependants; and that an underwriting decision would then have to be made to determine whether the applicant and her dependents are eligible for such insurance—that is, the applicant would be required to prove her insurability. Since the provisions of the group policy granting conversion privileges permit a former employee's wife to convert *"without further evidence of insurability,"* (Emphasis ours) the insurer cannot issue a conversion policy of any type which would require her to prove the insurability of herself and her dependents.

However we think the question is immaterial under the undisputed facts of this case. Appellant signed an application requesting certain coverages for herself and her children. Upon receipt of the application appellee issued to appellant an individual health policy which gave her exactly the benefits and coverages requested in her application. Appellant accepted the policy, kept it in her possession and paid the premiums on it for more than eighteen months. She was charged with notice of the contents of the policy. Under the circumstances she is not entitled to a reformation of the insurance contract. American National Ins. Co. v. Huey, 66 S.W.2d 690 (Tex.Comm'n App.1933); National

Life Underwriters v. Miller, 274 S.W.2d 169 (Tex.Civ.App., Fort Worth 1954, no writ).

The record contains no evidence of mutual mistake of the parties and the record acquits appellee of negligence in the issuance of the policy. It is undisputed that appellee issued the kind of policy it intended to—a policy which conformed in every respect to the kind of policy requested by appellant in her application. If there was any mistake it was only on the part of appellant. A mistake by only one of the parties is not sufficient to afford reformation of a contract; there must be a mutual mistake. Stegall v. Fulwiler, 423 S.W.2d 182, 186 (Tex.Civ.App., Amarillo 1967, no writ). If there was any negligence it was on the part of appellant in making out and signing her application; and in thereafter accepting and retaining the policy in question. Appellant's third point is overruled.

In her fourth point appellant asserts that a material issue of fact exists as to ambiguities created by various sections of the certificate of group insurance. Ambiguity is a question of law. We see no ambiguity in the provisions for conversion into an individual policy. In the conversion provisions it is explicitly stated that in the form of any individual policy issued pursuant to said provisions the coverage and all terms and conditions thereof should be as provided by the rules of the insurer at the time of the application.

Certainly there is no ambiguity in appellant's application with reference to the coverage requested. And there is no ambiguity in the coverage afforded by the policy. As we have said before, the policy gives appellant the exact coverage for which she applied. Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.