The **MUTUAL LIFE INSURANCE CO. OF NEW YORK** et al., Appellants,

v.

**AL D. ANDERSON, Appellee.**

No. 16765.

Court of Civil Appeals of Texas.

Dallas.

Sept. 23, 1966.

Rehearing Denied Nov. 4, 1966.

Locke, Purnell, Boren, Laney & Neely and Larry M. Lesh, Dallas, for appellants.

Woodruff, Hill, Bader & Kendall, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Al D. Anderson instituted this suit against appellants The Mutual Life Insurance Company of New York, hereinafter called Mutual, and J. David McConnell, a soliciting agent for Mutual. Appellee bases his suit on an alleged hospitalization and medical insurance contract. In a nonjury trial judgment was rendered in his favor against both appellants for $1,118.05; plus penalty damages, attorney's fees, interest and costs.

### EVIDENCE

Until January 14, 1964 appellee Anderson was employed by an advertising firm called Arma. While with that company he had a group policy with Great American Reserve Insurance Company. This policy provided that if an individual employee's coverage terminated because of the termination of his employment, his insurance might be converted without evidence of insurability.

On or about the above date Anderson went to work as manager for an advertising firm called Ad-PR, Inc., which firm carried its group insurance program with Mutual.

Some time in January 1964 appellant McConnell explained to appellee that Mutual's hospitalization policy could go into effect immediately, but its medical policy could not go into effect until appellee had been employed ninety days with Ad-PR, Inc. Appellee desired coverage during the ninety-day waiting period. McConnell offered him a policy which could give coverage for the ninety days. Appellee on January 24, 1964 signed an application for insurance for his wife, his son and himself.

Appellee was so busy with the duties of his employment that he did not take time to fill in the application form. By agreement McConnell later telephoned appellee's wife, who gave answers which McConnell wrote into the form appellee had signed. Not all of the blank spaces were filled in.

Appellee's employer, Ad-PR, gave McConnell its check for $29.86, the amount of the first premium payment. Half of this sum was paid by Ad-PR itself as its share of the premium. The other half was charged against appellee's salary account. McConnell then attached his own check to the application. He did this to expedite the processing of the application, as Mutual would not accept an application until the first premium payment had cleared.

When McConnell received the check for $29.86 from Ad-PR he gave Ad-PR a "Conditional Receipt". This receipt acknowledges the sum of $29.86 "in cash intended to be the first premium on proposed Select Hospital & Major Med. policy(ies) under which Al D. Anderson & family is to be insured * * *. Insurance will become effective under this receipt only as provided in (a) or (b) below * * *. (a) *If the Company at its Home Office is satisfied after such investigations* and medical

examinations as it may require *that,* on the later of (i) the date of the application and (ii) the date of the last of any such examinations, *each person to be insured under a policy referred to above was under the Company's rules an acceptable insurable risk for such policy without change in the applied for plan, amount, coverages or premium rate,* such policy shall be effective from such later date." (Emphasis ours.)

Up to this point the facts are undisputed. But here begins a conflict in the testimony. Three witnesses, one of them appellee Anderson, testified that on January 24, 1964, the same day the application was signed, they heard McConnell inform appellee that he was now *covered.* McConnell testified that he told appellee in substance that in the light of the information in the application appellee was *coverable.*

Appellee testified that in reliance upon the above representations of McConnell he refrained from exercising a conversion privilege contained in the group hospitalization policy issued to his former employer, Arma.

The application signed by appellee contained this provision:

"It is Mutually Agreed: (1) No one but the Company's President, a Vice-President, or Secretary has authority to accept information not contained in the application, to modify or enlarge any contract, or to waive any requirement. (2) Except as otherwise provided in any conditional receipt issued, any policy issued shall take effect as of its Policy Date, provided its delivery and payment of the first premium are made while each person to be insured is living. Due dates of later premiums shall be as specified in the policy."

On February 18, 1964 appellee was hospitalized for several days. He then went home for a few days, but was soon hospitalized again. On March 13, 1964 he was discharged from the hospital. On March 12, 1964 he applied to McConnell for proof of claim forms. McConnell then informed him for the first time that his application had been rejected. There was never any physical delivery of either a hospitalization or a medical policy covering appellee.

McConnell testified as to procedures followed by Mutual in processing applications. The applications are forwarded to Mutual's principal office in New York. There an underwriter looks over the preliminary information submitted. If he judges it to be a worthy application, a potential policy number is assigned. Then while further necessary information is being collected the policy is actually put into the processing or assembly work. Sometimes the policies are even sent to the Dallas office pending the completion of the investigation and before the decision is made to accept the application.

Referring to the two policies in controversy, hospitalization and medical, appellant McConnell testified:

"They were sent to Dallas but they were not privileged to be released as policies to the insured. So, our Underwriting Department had determined at one point that this was a worthy application, just as I had in the beginning, and they set up the machinery for the issuance of the policy. Then, when all of the information was in, the medical exam, the inspection reports and so forth, they decided they would not issue the policy to Mr. Anderson, * * *."

McConnell further testified that the policies were never issued and were never delivered to appellee.

The record includes the depositions of Albert A. Bingham, Mutual's Director of Health Insurance. They were taken in New York in answer to written interrogatories. Bingham testified that Anderson applied for a hospital and surgical policy and also a major medical policy. In the application questions were asked whether appellee had ever been treated or had any indication of chest pain, high blood pres-

sure, diabetes, ulcer, colitis or any stomach, intestinal, gall bladder or liver disorder, prostate disorder, impaired vision or hearing or any other injury or illness.

With the exception that the application disclosed that appellee had been treated for ten days in 1962 by Dr. Norris Wimberley of Tyler, Texas for non-infectious hepatitis the answers to the above questions were all in the negative.

In the application appellee signed there is a clause whereby he waived all provisions of law forbidding any physician who had attended or examined him from disclosing any knowledge or information thereby acquired.

Upon request from Mutual Dr. Wimberley sent a written report in regard to appellee. This report, which is attached to the deposition as an exhibit, stated that appellee had suffered from left lens opacity in April, 1957; that he had been hospitalized in September 1958 for fatigue and intermittent vertigo, when a diastolic blood pressure reading of 108 had been taken and a diagnosis of diabetes mellitus was made and appellee was instructed to lose weight; that he was seen again in November and instructed to lose more weight, that in September 1959 he had a urinary tract infection and was seen by Dr. Fred Warren, who made a diagnosis of prostatitis and cystitus; that he was hospitalized in 1959 with prostatitis, that contrary to the statement in the application that the May 1962 hospitalization was for non-infectious hepatitis, that hospitalization was actually for gastroenteritis, and at the time the hospital confirmed a suspected diagnosis of a small hiatal hernia and a small diverticulum of the second portion of the duodenum, and appellee had the same abnormal diastolic blood pressure reading of 108 and was experiencing morning chest pains.

After receipt of the above report from Dr. Wimberley, Mutual decided to reject appellee's application for insurance. Mutual's Dallas office was so instructed. The actual written instruction, dated February 25, 1964 reads, "Cancel policy #6410–27–79 and #6410–28–05. Regret we must exclude applicant as he does not meet MONY'S Underwriting Standards. Individual policies on wife approved and released."

On March 23, 1964 McConnell informed appellee that though appellee's application had been declined, upon execution of an amended application McConnell was authorized to deliver hospitalization policies covering appellee's wife. Appellee executed the amended application and McConnell delivered to appellee the two policies covering appellee's wife.

The amended application executed by appellee contains this provision:

"*It is understood and agreed that Al D. Anderson will be considered as not having been named in the application; that he will not be a covered member under the Policy; and that an Individual Hospital Policy naming Jeanne L. Anderson as the Insured has been issued.*" (Emphasis is ours.)

A change was then made whereby the $29.86 paid by Ad-PR, Inc. as the first premium payment on a policy for appellee Al D. Anderson was applied as the first premium payment on the policy issued to his wife, Jeanne L. Anderson.

## FINDINGS OF TRIAL COURT

Among the findings and conclusions made by the court were the following: (1) Upon receipt of appellee's application at its home office in New York, Mutual issued two policies covering appellee and mailed them to its office in Dallas, thereby accepting the application of appellee Al D. Anderson in accordance with the terms of the conditional receipt issued to him when the first payment of $29.86 was made. (2) McConnell, Mutual's agent, had authority to notify a customer of the acceptance or rejection of insurance coverage, or if not, he had apparent authority to do so. (3) Al D. Anderson relied on statements made to him by McConnell that he was "covered"

and in reliance thereon permitted his coverage in Great American Insurance to lapse. (4) By failing to return the $29.86 first premium payment to appellee, Mutual is estopped to deny coverage. (5) Insurance coverage of appellee was in full force and effect at all times relevant thereto. (6) At all times material to this controversy McConnell was a soliciting agent for Mutual, with authority as limited and defined in Article 21.04, Texas Insurance Code, V.A.C.S. (7) Pursuant to instructions from Mutual, McConnell advised appellee that appellee's application had been declined, but upon execution by appellee of an amended application McConnell was authorized to deliver hospitalization policies covering appellee's wife. (8) On March 23, 1964 appellee executed the amended application, whereupon McConnell delivered two policies of insurance on appellee's wife and applied the $29.86 received from Ad-PR, Inc. on January 27, 1964 to the first premium payment due on such policies.

## OPINION

Appellee does not allege or claim fraud in connection with his execution of the application for insurance, or the alleged representations of McConnell. The basis of his suit is that Mutual accepted his application, thereby consummating the contract, and that McConnell had actual, or at least apparent, authority to represent that he, appellee, was covered.

In its first five points on appeal Mutual asserts that there is no evidence, or there is insufficient evidence, that Mutual accepted appellee's application, that there is no evidence or insufficient evidence that appellee's application was accepted within the terms of the conditional receipt, that there was neither actual nor constructive delivery of the policies in question, therefore the court erred in concluding that Mutual did accept appellee's application.

■ We sustain appellant Mutual's first five points. It is undisputed that the policies were never delivered to appellee.

They were sent to Mutual's Dallas office to be held pending the completion of the investigation by the home office as to whether Mutual was satisfied that appellee was acceptable as an insurance risk under the company's standards. By the terms of the application delivery was made a condition precedent of the inception of the policies— a valid requirement. American Casualty & Life Ins. Co. v. Parish, Tex.Civ.App., 355 S.W.2d 781, 784 (no writ hist.).

Appellee's application was an offer to enter into contract of insurance. To consummate the contract there must have been an unconditional acceptance of the application. Republic Nat'l Life Ins. Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697; American Life Ins. Co. v. Nabors, 124 Tex. 221, 76 S.W.2d 497.

■ In his verified supplemental pleading appellee alleges that the conditional receipt formed no part of the contract, that he did not execute, accept or agree to the conditional receipt, and that the receipt was unilateral, without consideration and mutuality. These allegations constitute admissions which are conclusive against appellee. Taylor v. Catalon, 140 Tex. 38, 166 S.W.2d 102; Rose v. Baker, 138 Tex. 554, 160 S.W.2d 515. Therefore, a judgment in favor of appellee based on the conditional receipt cannot be supported. Appellant's sixth point is sustained.

■ The substance of appellant's seventh, eighth and ninth points is that the court erred in concluding that appellant is estopped from denying coverage. The court's conclusion is based on a finding that Mutual, after rejecting appellee's application, did not refund the $29.86 paid by Ad-PR, Inc. for appellee as the first premium payment. We agree with appellant. The evidence is undisputed that when appellee signed the amended application on March 24, 1964 the $29.86 was applied as the first premium payment on the policy which was issued to appellee's wife pursuant to the amended application. The said points are sustained.

Appellant's tenth, eleventh and twelfth points are that there is no evidence, or there is insufficient evidence, to support the court's finding that McConnell possessed apparent authority to represent to appellee that appellee was covered by the insurance for which he was applying, therefore the court erred in concluding that appellee was entitled to rely on said representations.

■ Again we agree with appellant. At the time McConnell is alleged to have made the representations the policies had not been delivered and Mutual had not completed its investigation. The alleged representations were directly contrary to the terms of the application and the conditional receipt. The court found that McConnell was a soliciting agent. Under the circumstances the alleged representations were beyond McConnell's authority to make. Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623; Debenport v. Great Commonwealth Life Ins. Co., 324 S.W.2d 566 (Tex.Civ.App., writ ref. n. r. e.); Southwestern Life Ins. Co. v. Evans, 262 S.W.2d 512 (Tex.Civ.App.); Indianapolis Life Ins. Co. v. Powell, 133 Tex. 547, 127 S.W.2d 172 (Tex.App., opinion adopted); American Nat'l Ins. Co. v. Huey, 66 S.W.2d 690 (Tex.Com.App.).

■ In order to have sustained a finding of apparent authority there must have been some evidence that the principal, Mutual, by its conduct led appellee reasonably to believe that the agent, McConnell, had authority to bind Mutual by the representations in question. Glens Falls Indemnity Co. v. Roberson, 282 S.W.2d 438 (Tex.Civ.App., no writ hist.); Bankers Protective Life Ins. Co. v. Addison, 237 S.W.2d 694 (Tex.Civ.App., no writ hist.); Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050 (Tex.Civ. App., writ ref.). We find no evidence that Mutual clothed McConnell with the indicia of authority beyond his authority as a soliciting agent. Appellant's tenth, eleventh and twelfth points are sustained.

■ In its fifteenth point appellant contends that appellee accepted the counter-offer of appellant as indicated in the amended application he signed, thereby excluding himself from coverage. This point is well taken. Appellee admits that he executed the written amended application which by its terms expressly excluded him from coverage. Republic Nat'l Life Ins. Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697; Legal Security Life Ins. Co. v. Ward, 373 S.W.2d 693 (Tex.Civ.App., no writ hist.); John Hancock Mutual Life Ins. Co. v. Brennan, 324 S.W.2d 610 (Tex.Civ.App., ref., n. r. e.); Amarillo Nat'l Life Ins. Co. v. Brown, 166 S.W. 658 (Tex.Civ.App., no writ hist.). The fifteenth point is sustained.

■ In its nineteenth, twentieth and twenty-first points appellant alleges that the court erred in concluding that appellee was covered by basic hospitalization and medical insurance which was in full force and effect at all times relevant hereto because there was no evidence, or insufficient evidence, to sustain such conclusion and the pleadings and evidence show the contrary. Said points are sustained.

In other points appellant complains that the court erred in rendering judgment for $1,118.05, said judgment being based on an incorrect measure of damages; in allowing penalty and attorney's fees; and in failing to make certain requested additional findings. In view of our sustaining others of appellant's points we have concluded that we must reverse and render the trial court's judgment. Consequently we see no necessity to pass on the other points above referred to.

■ Appellee in a counterpoint contends that Bingham's testimony as given in his deposition is hearsay and ought not to be considered. If the testimony had been offered to prove the truth of the statements made in Dr. Wimberley's report it would be hearsay. But it was not offered for that purpose. It was offered to explain why

Mutual was not willing to accept appellee's application. When considered for that purpose it is not hearsay. McCormick & Ray, "Texas Law of Evidence", Vol. 1, pp. 558–560.

The judgment of the trial court is reversed and judgment is here rendered in favor of appellants that appellee take nothing against them.

Reversed and rendered.