**Rev. F. H. BUGH et al., Appellants,**

**v.**

**Orville Charles WORD, Jr., et ux., Appellees.**

**No. 11571.**

Court of Civil Appeals of Texas.

Austin.

Jan. 24, 1968.

Rehearing Denied Feb. 14, 1968.

Sneed, Vine, Wilkerson & Selman, Louis Scott Wilkerson, Austin for appellants.

Maloney, Black & Hearne, Thomas Black, Austin, for appellees.

HUGHES, Justice.

The parties to this suit are Reverend F. H. Bugh and wife, Pearl A. Bugh, and Mabel Pearl Minson Johnson, daughter of Rev. and Mrs. Bugh, appellants, and Orville Charles Word, Jr. and wife, Margie L. Word, appellees. The suit was instituted by appellees for declaratory judgment that a deed from Rev. and Mrs. Bugh dated June 1, 1962 to appellees conveying 114 acres, more or less, out of the Morris Baxter Survey No. 67, F. A. Collier Survey and W. M. Heronymus Surveys Nos. 800 and 801, in Travis County, included a 2.5 acre tract, called the Point, and that a subsequent deed from the Bughs to Mrs. Johnson purportedly conveying the Point passed no title and was void.

Appellants filed answers and counterclaims in which they denied that the Point passed under the June 1st deed and in the alternative, that if it did so pass then this was the result of a mutual mistake by the parties to such deed; that it was the result of a unilateral mistake on the part of the Bughs "and was directly induced by the misrepresentations and other actions" of appellees who "assured and represented to counterclaimants by word, act and deed, either personally or through their author-- ized agents, at the time said Contract of Sale and Deed were executed that said 2.5 acres were expressly excluded from said conveyance;" that the Bughs relied on such representations and that such misrepresentations caused the mistake made in the description in the deed. They prayed for reformation of the deed to exclude the Point, or, in the alternative for rescission.

Trial was to a jury which made these findings:

(1) The inclusion of the Point in the June 1st deed was a mistake on the part of the Bughs.

(2) Mr. Word, at the time the deed was signed, did not know that Rev. Bugh did not intend to convey the Point.

(3) Mr. Word did not represent prior to the execution of the deed, through acts or conduct, that the Point was excluded from the deed.

(4) Mike Levi, a realtor, did represent to Rev. Bugh prior to the execution of the contract of sale and deed that the Point was excluded from the sale; that Rev. Bugh relied upon the truth of such representations in executing the contract and deed and that such representations were a material inducement to him in executing the contract and deed.

(5) Mike Levi did not make such representations to induce Rev. Bugh to execute the contract and deed.

(6) Mike Levi had apparent authority to represent Mr. Word as his agent during the negotiations leading to the execution of the contract and deed.

(7) Rev. Bugh, prior to execution of the deed failed to advise Mr. Word personally that he did not intend to convey the Point, that this was negligence on the part of Rev. Bugh which was a proximate cause of the mistake made by him.

These findings were received by the trial court and based on them and the law and the undisputed evidence judgment was rendered construing the June 1st deed to convey the Point, removing the deed from the Bughs to Mrs. Johnson as a cloud on the title of appellees to the Point and decreeing that appellants take nothing by their counterclaims.

Appellants do not contend here that the trial court erred in construing the June 1st deed as conveying the Point. We make the following statement only in order that the testimony of witnesses later adverted to may be better understood.

The June 1st deed conveyed 160.2 acres with certain property excluded, one of the exclusions being stated in this language:

"Save and except the land and lots heretofore subdivided as Perry's White Cliffs according to map or plat of record in Book 7, Page 156, Plat Records of Travis County, Texas, containing approximately 16 acres of land;"

The 2½ acre Point is adjacent to the Perry's White Cliffs subdivision and is separated from the other acreage conveyed to the Words by the subdivision. The Point was shown to be no part of the subdivision but Mike Levi, who drew the June 1st deed, testified that he believed the words "land and lots," excluded the Point from the conveyance, and he so advised Rev. Bugh.

Appellants' first point of error is that the trial court erred in refusing to reform the June 1st deed so as to exclude the Point under the jury findings that Mike Levi had apparent authority to act as the agent of Mr. Word and that since Mr. Levi represented to Rev. Bugh prior to the execution of the contract and sale that the Point was excluded from the sale, Mr. Word was bound by such representation, Rev. Bugh having been induced thereby and having relied thereon.

It is our opinion that there is no evidence to support the finding of the jury that Mike Levi had apparent authority to represent Mr. Word in the negotiations leading to the execution of the contract of sale and June 1st deed.

Before reciting the evidence relating to this point, we will dispose of the contention made by appellees that there was no pleading to support submission of this issue to the jury.

The pleading of appellants, as shown above, alleged only that Mr. Word, personally or through "authorized agents" made the representations that the Point was excluded from the contract and deed.

There is a difference between the apparent or ostensible authority of an agent and the authority of an apparent or ostensible agent.

■ An apparent or ostensible agent is no agent, although upon establishing the elements of estoppel the purported principal may be estopped to deny the agency. Agency 2 C.J.S. § 23g, p. 1050.

■ There was no pleading that Mike Levi was an apparent or ostensible agent, the only pleading was that Mr. Word acted through "authorized agents."

There were no exceptions to the pleadings, no objections to the evidence and no exceptions to the Court's charge on the ground that the pleadings did not allege that Mike Levi was an apparent or ostensible agent of Mr. Word. Under these

circumstances, this issue was tried by consent. VI Texas Bar Journal, p. 77, question 88; (opinion of Committee on interpretation of rules of civil procedure); Zorola v. Bishop and Son, 401 S.W.2d 713, Tex. Civ.App., San Antonio, writ ref. n. r. e., Stephens v. Anderson, 275 S.W.2d 869, Tex.Civ.App., Austin, writ ref. n. r. e.

■ An "apparent" or "ostensible" agent is one whom the alleged principal, either intentionally or by want of ordinary care, induces a third person to believe to be his agent, although he has not, either expressly or by implication, conferred authority on him. This relationship is based on estoppel, and it must arise from words or conduct of the principal alone. The acts or words of the agent are not to be considered in determining the existence of this relationship. Minneapolis-Moline Company v. Purser, 361 S.W.2d 239, Tex.Civ. App., Dallas, writ ref. n. r. e.; Gibbins Inc. v. McMillan, 383 S.W.2d 94, Tex. Civ.App., El Paso, writ ref. n. r. e.

■ Bearing in mind the law as stated, we will examine the evidence to determine what Mr. Word did to constitute Mike Levi, his apparent agent, as the jury found.

In the mid-1950s Mr. Word moved to Austin and became a next door neighbor of the father of Mike Levi, a real estate agent. Mr. Word was interested in acquiring some land. He occasionally consulted with Levi's father with regard to real estate matters, knowing that he owned some land in the area, and asked him "to be on the lookout for land for me to buy."

Prior to the events here in question, Mr. Word had looked at different tracts of land in company with both Mike Levi and his father and at land in company with only Mike Levi.

Sometime in the early part of 1962, Mike Levi noticed a "For Sale" sign with Rev. Bugh's telephone number which he had placed on the gate in the fence on his most southern boundary. Mike Levi talked with Rev. Bugh, and at that time Rev.

Bugh told Mike Levi approximately what he wanted for the land.

On this occasion Rev. Bugh told Mike Levi the Point was not for sale.

Later Mike Levi took Mr. Word to view the property. They did inspect part of the property and a house located on it. They did not go on the White Cliffs subdivision nor to the Point which is northeast of the subdivision. Subsequently, Mr. Word, alone, went to the Bugh property and to the Point.

A short time prior to March 10, 1962, on his way to view this property, Mr. Word gave Mike Levi a check for $2,000.00 and authorized Mr. Mike Levi to take it to Rev. Bugh and tell him that he "would take the property being offered."

Mr. Word also testified:

"Q  Mr. Word, who did the negotiatings with Mr. Bugh?

A  The negotiation, Mr. Mike Levi acted as, I presume, the go-between, if that is negotiating.

Q  Did you tell Mr. Levi not to go and negotiate with Mr. Bugh?

A  I told him not to make any deals, other than for all of the land. There was something said only about the house, at one time.

Q  So you gave him some instructions on what you wanted. Correct?

A  All of the land, yes, sir."

Rev. Bugh cashed the $2,000.00 check before March 10th, 1962.

Mr. Mike Levi prepared a contract of sale in which he was named as agent for Rev. Bugh and made arrangements to meet Rev. Bugh at the Austin National Bank. At this meeting Rev. Bugh read the contract and asked Mike Levi if the Point was excluded and upon being assured that it was, he signed it. Regarding this meeting, Rev. Bugh testified:

"Q  Did you notice in the contract that that Mr. Levi is described as your agent? Did you notice that?

A No, I didn't notice that he was, that part of it. He came, as I understood, representing Mr. Word.

Q Well, did he tell you he was representing Mr. Word? All he ever told you was that he had a friend who wanted to buy some land?

A He came and said that Mr. Word had given him this contract, signed, to present to me, and had put up $2,000.00 earnest money, and I thought from that, I just took it from that that he was representing Mr. Word in trying to get some land for Mr. Word.

Q But, he didn't tell you he was representing Mr. Word?

A I don't know that there was any discussion on that.

Q And the contract that he came with says that you are acting through the undersigned and duly authorized agent, you, F. H. Bugh, doesn't it? And you read that, didn't you, Mr. Bugh?

Q Well, if I did, I didn't pay much attention to that, but I wasn't thinking about who was representing who. I was thinking about what the contract said about selling the land.

* * * * * *

Q You had not been assured by Mr. Word about anything?

A Not by Mr. Word, no, but I took it that Mr. Levi was representing Mr. Word, and what he said was correct.

Q And you took it that Mr. Levi was representing Mr. Word, just because Mr. Levi had called you and told you that he had a friend that wanted to buy some land. Is that right?

A How is that?

Q You took it that Mr. Levi was representing Mr. Word just because Mr. Levi called you and said he had a friend that wanted to buy some land?

A That is correct."

The evidence is conflicting as to when this contract was signed by Mr. Word. He stated that it was signed in the home of Rev. Bugh when they first met on March 10, 1962, the date the contract bears. Mike Levi testified that the contract "probably" had Mr. Word's signature on it when he met with Rev. Bugh at the Austin National Bank. .

Whether the contract had been signed by both parties before their first meeting at the home of Rev. Bugh is in doubt but the parties agree that at such meeting there was no discussion of whether the Point was included in or excluded from the contract.

Mr. Word testified at length regarding the meeting in the Bugh home when the provisions of the contract were settled. Only Rev. Bugh, Mr. Word and Mike Levi were present on this occasion. Some of the discussion resulted in changes in the contract which show to have been handwritten. As stated, there is no contention that the Point was discussed at this meeting.

Whether the contract was signed before or at the meeting in the Bugh home is not material here. It is certain that it was signed by both parties no later than the time of such meeting and that it was signed before the occasion when the parties and others met in the Bugh home to discuss the deed, if they did so meet, and before they met to execute the deed.

The rights of the parties to the March 10 contract were fixed when it was signed by them. It is on this date that we must appraise the evidence to determine its legal sufficiency to sustain the jury finding that Mike Levi was the apparent or ostensible agent of Mr. Word in this transaction.

We are unable to find that Mr. Word said anything or did anything known to Rev. Bugh which would constitute reasonable grounds upon which he could predicate

a belief that Mike Levi was his agent and that he, Mr. Word, would be responsible for his misdeeds.

Mike Levi knowing that Mr. Word was interested in buying some land saw a for sale sign on some property giving a telephone number. Levi talked with Rev. Bugh who owned the land. Whether Mr. Word was mentioned in this conversation is not shown.

Mike Levi came to Rev. Bugh with a contract probably signed by Mr. Word wherein Mike Levi was described as the agent of Rev. Bugh and in which Mr. Word agreed to buy the described property upon the terms stated.

Rev. Bugh, Mike Levi and Mr. Word met to go over this contract. Some changes were written in. There is no evidence that Mike Levi did any negotiating for Mr. Word.

Unless we are willing to hold that a real estate broker who draws a contract describing himself as agent for a seller of land and procures the signature of a buyer to such contract constitutes the broker the agent of the buyer so as to be responsible for the misrepresentations of the broker to the seller, then we must hold that there is no evidence to sustain the finding that Mike Levi was the apparent or ostensible agent of Mr. Word. We are not willing to so hold. To do so would upset normal, routine real estate transactions and would place them all in jeopardy.

■ We quote from Goode v. Westside Developers, Inc., 258 S.W.2d 844, Tex.Civ. App., Waco, writ ref. n. r. e., the rule regarding the apparent authority of an admitted real estate broker:

"Furthermore, the doctrine of apparent authority of an agent to bind his principal ordinarily has no application to transactions involving the sale or conveyance of land. Vol. 2, Tex.Jur. p. 451, Sec. 55 and authorities. This is so because, among other reasons, a real estate agent or broker is not usually regarded as a general agent but is considered as only a special agent whose authority is limited to finding a purchaser for his principal and as a general rule he does not have the power or authority to consummate the contemplated sale. Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922; Donnan v. Adams, 30 Tex.Civ.App. 615, 71 S.W. 580 (er. den.).''

■ A priori, it seems to us, the creation of an ostensible or apparent agent should not be permitted in real estate transactions. This is the import of the decisions which hold that one dealing with a real estate broker has a duty to inquire into his authority. First Texas Joint Stock Land Bank v. Holloway, 77 S.W.2d 301, Tex.Civ. App., Amarillo, n. w. h., Hearn v. Hanlon-Buchanan, 179 S.W.2d 364, Tex.Civ.App., Fort Worth, writ ref. w. m.

In this case, Rev. Bugh did not inquire of either Mike Levi or Mr. Word either as to the fact of the agency alleged or the extent of his authority.

We overrule point one.

Appellants' second and last point is that if they are not entitled to a reformation of the deed to exclude the Point, they are entitled to have the transaction rescinded under jury findings (1), (4) and (6), supra.

■ We have held that there is no evidence to support finding (6) relating to the apparent authority of Mike Levi to act as agent for Mr. Word. The remaining issues will not support a decree for rescission of the contract and deed when considered with jury findings (7, supra) convicting Rev. Bugh of negligence in not advising Mr. Word personally that he did not intend to convey the Point which negligence was the proximate cause of the mistake made by Rev. Bugh. See 10 Tex.Jur.2d, Cancellation of Instruments, Secs. 36 and 37. Point two is overruled.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.