**Clarence HUGINNIE, Appellant,**

v.

**R. D. LOYD et al., Appellees.**

**No. 635.**

Court of Civil Appeals of Texas, Tyler.

June 29, 1972.

Rehearing Denied July 20, 1972.

Mullinax, Wells, Mauzy & Baab, Inc., James C. Barber, Dallas, for appellant.

Akin, Gump, Strauss, Hauer & Feld, Michael Lowenberg, Dallas, for appellees.

DUNAGAN, Chief Justice.

This is a summary judgment case. The suit is for damages for an alleged breach of a real estate contract brought by the appellant, Clarence Huginnie, against the appellees, Dr. R. D. Loyd and Martha Baldwin, arising out of a real estate contract allegedly entered into between the appellant and the appellee Baldwin, allegedly acting as the agent of the appellee Loyd. The appellees filed their motion for summary judgment, and on April 9, 1971, after hearing thereon, the trial court took the appellees' motion under advisement accepting briefs from both parties. Thereafter on

October 5, 1971, the trial court granted appellees' motion for summary judgment, from which appellant duly perfected his appeal.

Appellant Huginnie answered a classified ad in the Dallas Morning News, June 25, 1970 Edition. Apparently, this ad was placed by either appellee Loyd's mother or father. The house advertised for sale was owned by Dr. Loyd and was located at 1610 Reynoldston in Dallas. Two phone numbers were given, one which belonged to Miss Baldwin, who is Dr. Loyd's cousin, and a Tyler telephone number, which was that of Dr. Loyd's mother and father. The house was advertised as ready for immediate occupancy. Further, Dr. Loyd had left the key with his father and mother who, without Dr. Loyd's knowledge, had in turn given it to Miss Baldwin to enable her to show the house, since Dr. Loyd's parents lived in Tyler. All of this transpired while Dr. Loyd was in Europe. Dr. Loyd didn't authorize this, but knew that his father had thought about it and he (Loyd) had no objection to it.

In responding to this ad, appellant Huginnie first called the number in Tyler and spoke with Dr. Loyd's mother. It is Huginnie's testimony that she told him he could arrange to see the house by contacting Mrs. Annie Baldwin or Martha Baldwin in Dallas at phone number 339-7065. This number, which was given along with the Tyler telephone number, was also listed in the ad as a number to contact concerning the property. Huginnie called the same day and arranged to meet Miss Baldwin at the property listed for sale. It is noteworthy that Dr. Loyd's mother told Huginnie only that he could arrange to see the house by contacting Miss Baldwin. Nothing was said about Miss Baldwin having any authority from anyone to sell or contract to sell the property—but only to unlock the door for Huginnie to see the property. Huginnie states in his affidavit that although the appellee Martha Baldwin told him she did not have the authority to transfer title to him, she at no time told him she did not have the authority to enter into a real estate contract on the property, and she did, in fact, agree to and sign the real estate contract dated June 25, 1970, designated therein as the "seller's representative," without any pressure or coercion from him. She took his check of $400.00 and no blanks were filled in on the contract after he left her presence. Miss Baldwin, however, disputed Huginnie's version of the circumstances surrounding the signing of the contract, stating that she told him that she was not Dr. Loyd's agent and was not authorized to act upon his behalf and therefore could not sign a contract of sale.

Miss Baldwin testified that Huginnie told her that her uncle (Dr. Loyd's father) had told him (Huginnie) that she would sign and take his check; that Huginnie showed her where the contract provided that it was in no way valid unless it was signed by the seller and that he said this doesn't obligate you in any way and Miss Baldwin testified, "so I was very frightened and I did sign where it says representative and I took his check and the contract and I went home and called my uncle." Upon her uncle's instruction on or about June 29, 1970, she returned the check and contract to Huginnie.

Although Dr. Loyd was in Europe at the time of the transaction in question, he was trying to sell the property in question and left his father instructions to "find someone who would like to buy the home." He left no such instruction with anyone else. Dr. Loyd returned from Europe around July 1, 1970.

Appellant Huginnie by his affidavit states that after Dr. Loyd returned from Europe that in a telephone conversation Dr. Loyd said he would agree to honor the contract and he later appeared at Stewart Title Company in Dallas with Huginnie on July 22, 1970, to complete the closing of the sale; that the sale was not closed on

that day because the title company did not have all the papers ready; and that he later learned that Dr. Loyd had decided to sell the property to somebody else.

Dr. Loyd admits that after his return from Europe he had a telephone conversation with Huginnie; that he told Huginnie that he thought the church (Beckley Hills Baptist Church) was going to buy the property; that he would have first choice at the property if the church did not buy it; that Huginnie replied to the best of his memory something like "(w)ell, I think we understand each other. That will be fine." That Huginnie made no mention that he thought he had the initial right to the property.

The record shows that thereafter Dr. Loyd did sell the property to the Beckley Hills Baptist Church on the basis of an oral arrangement which his parents had with the church before Huginnie signed the written contract here in question, but through a written contract entered into with the church after June 25, 1970, the date of Huginnie's contract and before his telephone conversation with Huginnie.

Huginnie further states in his affidavit that it was his impression that Miss Baldwin had the authority to sell the property for Dr. Loyd because she had the key to the house and also because her number was listed in the paper, and for the further reason that the house was listed as being available for "immediate occupancy," giving him the impression that she had the authority to take care of all necessary matters concerning it.

The motion for summary judgment filed by the appellees stated two grounds: that Miss Baldwin had neither actual nor apparent authority to act for Dr. Loyd and that in any event the "contract" was within the Statute of frauds, Sec. 26.01, Texas Business and Commerce Code, V.T.C.A., and was therefore unenforceable.

Dr. Loyd knew nothing of the transaction here in question until he returned from his European trip. The summary judgment proof is uncontradicted that Miss Baldwin had absolutely no authority to contract on Dr. Loyd's behalf.

Section 26.01 of the Business and Commerce Code provides as follows:

"(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to

\* \* \* \* \* \*

(4) a contract for the sale of real estate;

\* \* \* "

In order for the appellees to demonstrate their entitlement to summary judgment, a movant must " \* \* \* show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 166–A, Texas Rules of Civil Procedure. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup. 1970). If the summary judgment evidence does not meet and dispose of, as a matter of law, each element of the plaintiff's case, summary judgment should not be granted. The burden of proof is upon the parties

moving for summary judgment and all doubts as to the existence of a genuine issue as to a material fact are resolved against them. The evidence upon such a motion must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. We will adhere to these rules in disposing of this appeal.

■ The summary judgment proof is quite clear, direct, positive, and uncontradicted that Miss Baldwin was not acting as Dr. Loyd's agent when she signed the contract in question. The uncontradicted evidence shows that Dr. Loyd never at any time prior to the signing of the contract in question talked to Miss Baldwin about the sale of the property in controversy. In our opinion the summary judgment proof establishes, as a matter of law, that Miss Baldwin did not have any authority of any kind or character to act for or on the behalf of Dr. Loyd in the sale of the property in question.

■ The existence of "apparent authority" is based on the principal of estoppel. It is to be determined by the acts of the principal, not by the acts of the agent. Bugh v. Word, 424 S.W.2d 274 (Tex.Civ. App., Austin, 1968, writ ref., n. r. e.); Mutual Life Insurance Company of New York v. Anderson, 408 S.W.2d 335, 341 (Tex. Civ.App., Dallas, 1966, writ ref., n. r. e.); and Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050, 1052–1053 (Tex.Civ.App., Waco, 1931, writ ref.). We find no evidence of conduct on the part of Dr. Loyd that would lead Huginnie, using diligence and discretion, to naturally and reasonably suppose Miss Baldwin possessed apparent authority to enter into the contract here involved. Great American Casualty Company v. Eichelberger, 37 S.W.2d 1050 (Tex.Civ.App., Waco, 1931, writ ref.). Miss Baldwin testified that when Huginnie asked her to sign the con-

tract she told him she could not because she was not authorized in any way to sign it. Huginnie, in his affidavit states only in this respect that Miss Baldwin "at no time said she did not have the authority to enter into a contract of sale on the property." There is no summary judgment proof in this record that Miss Baldwin at any time represented to Huginnie that she was Dr. Loyd's agent or that she had any authority to sign the contract.

■ The doctrine of "apparent authority" of an agent to bind his principal ordinarily has no application to transactions involving sale or conveyance of land. Bugh v. Word, supra. "This is so because, among other reasons, a real estate agent or broker is not usually regarded as a general agent but is considered as only a special agent whose authority is limited to finding a purchaser for his principal and as a general rule he does not have the power or authority to consummate the contemplated sale." Goode v. Westside Developers, Inc., 258 S.W.2d 844 (Tex.Civ.App., Waco, 1953, writ ref., n. r. e.); also see Bugh v. Word, supra. It is the established law in this state that one dealing with a real estate broker or agent has a duty to inquire into his authority. Bugh v. Word, supra. In the case at bar Huginnie made no inquiry as to Miss Baldwin's authority to represent Dr. Loyd in the sale of the subject property from either Miss Baldwin or Dr. Loyd.

■ Accepting as true, as we must do, that Dr. Loyd, after he returned from Europe, in a telephone conversation with Huginnie agreed to sell the property to Huginnie, on the same terms as provided in the contract signed by Miss Baldwin, it would be the first and only contract of sale between Huginnie and Dr. Loyd since neither Dr. Loyd nor anyone with legal authority to do so had contracted with Huginnie for the sale of this property. Such verbal contract not having been reduced to writing falls within the Statute of Frauds

**702**

and is thus unenforceable. 26.01, Texas Business and Commerce Code.

As above stated, this suit was brought against both R. D. Loyd and Martha Baldwin solely for damages for an alleged breach of a real estate contract that forms the basis of this controversy.

It is our considered opinion that the summary judgment proof establishes as a matter of law that there is no genuine issue as to any material fact and that appellees are entitled to a judgment. Gibbs v. General Motors Corp., supra.

Judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

■ Appellant in his motion for rehearing says that the holding of this court "that the doctrine of apparent authority is not applicable in a case dealing with the sale of land, in reliance on the case of Bugh v. Word * * *" is error. He argues that the holding in Bugh v. Word is limited to transactions dealing with a *licensed* real estate agent or broker and therefore has no application to Miss Baldwin in the instant case, who is not alleged or intimated in any way to have been a *licensed* real estate agent or broker.

The rule of law here in question applies to any agent who is involved in a transaction for the sale or conveyance of land. We find no language in Bugh v. Word, Tex.Civ.App., 424 S.W.2d 274, or Goode v. Westside Developers Inc., Tex.Civ.App., 258 S.W.2d 844, which limits the rules expressed in those opinions to *licensed* real estate agents or brokers only, nor do we think that there is any inference to that effect. In announcing this rule in both the Bugh and Goode case, the courts use the term "agent" only. In the Bugh case the court said " * * . * an ostensible or ap-

parent *agent* should not be permitted in real estate transactions." (Emphasis ours.)

■ Moreover, there can be no ratification of a contract by one who is not a party to it unless the original contract purported to be in the name of, or for, the person alleged to have ratified it. Pair v. Caraway Drilling Co., 250 S.W.2d 292 (Tex.Civ.App., Eastland, 1952, writ ref., n. r. e.); Warren Mfg. Co. v. Hoover, 223 S.W.2d 524 (Tex.Civ.App., Amarillo, 1949, n. w. h.); O'Connor v. Camp, 158 S.W. 203 (Tex.Civ.App., Dallas, 1913, writ ref.). As the contract here involved was not made in the name of Dr. R. D. Loyd, nor purported to be made for him, his acquiescence therein and promise to honor the contract and make a deed to the property in question to Huginnie, there being no writing to that effect, did not amount to a ratification and a summary judgment was proper.

Paragraph A of the contract states as follows: "The SECRETARY OF HOUSING AND URBAN DEVELOPMENT, acting by and through the FEDERAL HOUSING COMMISSIONER as SELLER agrees to sell to the PURCHASER named below * * *." The name of Dr. R. D. Loyd is not found anywhere in the contract.

All of the parties to this lawsuit agree that neither Dr. Loyd nor Miss Baldwin is, or has ever been, secretary of Housing and Urban Development or the Federal Housing Commissioner, nor has either ever been an agent of such federal officials.

■ The summary judgment proof having established, as a matter of law, that no authority was vested in Miss Baldwin, the alleged agent, to contract for the sale of the property for Dr. Loyd, the contract in controversy is of no effect as to him.

Appellant's Motion for Rehearing is respectfully overruled.